UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-414-H

JOSEPH FARMER                                                                                    PLAINTIFF

V.

UPS SUPPLY CHAIN SOLUTIONS, INC.                                               DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Joseph Farmer, was an employee of UPS Supply Chain Solutions, Inc. ("SCS"). Plaintiff's primary claim is wrongful discharge because he opposed and objected to SCS's deceptive and unlawful practices. Plaintiff also alleges theft by deception under KRS 514.040. Due to diversity of citizenship of the parties, SCS removed to federal court pursuant to 28 U.S.C. § 1332(a). On November 5, 2004, the Court entered a Litigation Plan calling for completion of discovery by July 1, 2005. However, on February 2, 2005, Defendant moved to dismiss both counts of the complaint as a matter of law.

I.

SCS employed Plaintiff as a sales representative from 1993 to 1998 and as national account manager from 1999 to 2003. His principal job responsibility was to recruit business for SCS's shipping services. A substantial part of his compensation derived from his success in doing this. In 2001, Plaintiff was partially responsible for convincing Applied Materials, Inc. ("Applied Materials") to shift a substantial portion of its global shipping volume to SCS.

Plaintiff continued to provide assistance with the Applied Materials account. Plaintiff

says that he communicated with Applied Materials concerning rates, but that he was not responsible for preparing the final bills sent to Applied Materials. The usual billing practice was for SCS to bill the customer directly from the shipping site. Normally, billing to Applied Materials would have come directly from the Jefferson County facility where the services were provided. In this particular case, however, Plaintiff says that SCS personnel in Atlanta, Georgia, prepared those bills. Plaintiff alleges that they padded the final bill sent to Applied Materials, including charges for services that were never provided.

Plaintiff alleges that he became aware of these deceptive billing practices. He says that he opposed them and attempted to stop the practice through appropriate channels at SCS. At some point Applied Materials learned that it might be overpaying for SCS services. Upon learning this, Applied Materials pulled a substantial volume of its shipping business.

Plaintiff alleges that as a direct result of his opposing SCS business practices and Applied Materials shifting its services to another company, he was terminated from his employment. He alleges that a substantial motivating factor for his termination were his actions attempting to avoid violating Kentucky criminal statutes and also his attempts to oppose and correct the deceptive billing practices directed towards Applied Materials.

II.

In Count I of his complaint, Plaintiff asserts that SCS violated KRS 514.040(1)(a), the Kentucky Theft by Deception Statute, by adding and padding charges onto the final bills that it sent to Applied Materials. The Kentucky Penal Code, KRS 514.040(1)(a) provides:

> (1) A person is guilty of theft by deception when the person obtains property or services of another by deception with the intent to deprive the person thereof. A person deceives when the person intentionally:

2

> (a) Creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind;

Plaintiff does not contend that he was directly deceived or directly damaged by SCS's alleged conduct. Everyone must admit that if Plaintiff's allegations are true, then SCS directed illegal conduct toward Applied Materials and directly harmed that company as a result of higher charges paid. KRS 446.070 provides:

> A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

Plaintiff alleges that he is entitled to recover damages under this statute for violations of KRS 514.040(1).

Taken together, Chapter 514 and 446 provide a civil remedy for theft by fraud and deception. Plaintiff alleges that SCS essentially stole money from Applied Materials by means of fraud and deception and that he also suffered damages as a consequence. However, neither KRS 514.040 or KRS 446.070 were designed to provide a civil remedy for those such as Plaintiff, who as a matter of actual fact are outside the class of persons the statutes directly protects and are outside those persons damaged directly by violations of the statute. The purpose of KRS 446.070 is "to ensure that a person for whose benefit a statute was enacted may recover from an offender although the statute does not prescribe a civil remedy for violation." *Alderman v. Bradley*, 957 S.W.2d 264, 267 (Ky. App. 1997). In other words, the statute "applies only if the alleged offender has violated a statute and the plaintiff was in the class of persons which that statute was intended to protect." *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 99-100 (Ky. 2000).

Plaintiff says that the public at large is within the class of persons that Chapter 514 protects. Of course, this is true in a general sense that every person in Kentucky is within the potential group of those could seek the protection of these statutes. After all, anyone in Kentucky could be the subject of theft by fraud and deception. Nevertheless, to pursue rights under Chapters 514 and 446, one must be the actual and direct subject of fraud or deception. Not merely the theoretical and tangential subject of it. Unfortunately, Plaintiff is not a person actually or directly the subject of fraud. Even under his own allegations, Plaintiff is only incidentally or indirectly affected.

The Court can find no case in which Kentucky courts have expanded civil liability under Chapters 514 and 446 to include persons in Plaintiff's circumstances. To do so would constitute a dramatic expansion of those persons capable of instituting civil claims under these statutes. This Court sees no evidence whatsoever that Kentucky courts would rule in such a fashion. This Court declines to predict that Kentucky courts are likely to authorize it.

Plaintiff argues that *State Farm v. Reeder,* 763 S.W.2d 116 (Ky. 1989) provides strong support for its interpretation. This Court disagrees. *State Farm v. Reeder* is not analogous to our circumstances. In that case, the third party asserted a claim against State Farm's insured. The court concluded that Chapter 304 is designed to protect third party bad faith claims as well as first party claims and that State Farm could be sued for both. In other words, it concluded that State Farm owed specific duties to third party claimants as well as to its own insureds. Plaintiff asserted a violation of those duties. Here, Plaintiff cannot show that SCS violated a duty owed to him, only that it may have violated duties owed to Applied Materials. Without a duty and the violation of it, Plaintiff has no claim. At best, Plaintiff has alleged damages arising from the

breach of duties that SCS owed to Applied Materials. Kentucky courts would not entertain the cause of action under such circumstances.

III.

In Plaintiff's second cause of action, he alleges wrongful termination because he refused to violate the law. Specifically, Plaintiff contends that SCS unlawfully terminated his employment because he took "appropriate action to oppose and get corrected the wrongful and deceptive billing practices that SCS was directing toward Applied Materials." Plaintiff alleges that had he not opposed SCS's billing practices, he would have violated KRS 502.020(1), which is a Kentucky statute concerning the liability for conduct of another.

KRS 502.020(1) provides:

> (1) A person is guilty of an offense committed by another when, with the intention of promoting or facilitating the commission of the offense, he:
>
> (a) solicits, commands or engages in a conspiracy with such other persons to commit the offense; or
>
> (b) aids, counsels, or attempts to aid such person in planning or committing the offense; or
>
> (c) having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.

In Kentucky, the presumption is that employment is terminable at will. *Firestone Textile Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983). This means that either party to an employment relationship can terminate it at any time without the need to allege a specific cause or reason. The Kentucky Supreme Court has defined a narrow public policy exception to the at-

5

will doctrine where the reason for the discharge is an employee's "failure or refusal to violate a law in the course of employment." *Grzyb v. Evans*, 700 S.W.2d 399, 402 (Ky. 1985). Plaintiff says that he fits within this exception to the at-will doctrine, asserting that he was discharged for refusing to violate the law.

Plaintiff's essential position is that SCS was padding bills to Applied Materials and that he knew it. Part of his job as national account sales manager was to maintain good relations between SCS and Applied Materials. Inevitably, part of that job would involve maintaining the SCS's confidence that its bills were accurate. It is not so unreasonable an assertion that had Plaintiff continued his best efforts as national account sales manager with regard to the Applied Materials account, a reasonable jury could conclude that he knowingly supported, facilitated and enabled the alleged fraudulent activity.

SCS is correct in asserting that Plaintiff did not have a fraudulent state of mind. However, that assertion is based upon the now known fact that Plaintiff opposed the alleged fraud. If he had not taken action to oppose the alleged fraud, his state of mind would be a lot less clear. A reasonable jury could certainly conclude that by continuing to foster good relations with Applied Materials and thereby preventing the discovery of the fraud, Plaintiff would have contributed to the successful accomplishment of a criminal act. His state of mind would not be so clear in those circumstances.

SCS says that Plaintiff could not have violated KRS 514.040 because he was not in a position to carry out the fraud and that his mere knowledge of it or acquiescence with it is insufficient to constitute an aider, abettor or facilitator. While a jury might certainly agree with these conclusions, it is also possible that a reasonable jury could conclude otherwise. By

fostering trust and confidence in SCS, Plaintiff would play an essential role in the continuation of the alleged fraud.  That could certainly meet the test of aiding and abetting.  At this stage of the proceedings, the Court is not prepared to say that the facts of the case would bar a reasonable jury from concluding that Plaintiff's continued participation in the alleged scheme would have constituted a criminal violation.

        The Court will enter an order consistent with this Memorandum Opinion.

cc:    Counsel of Record